Shaw C. J.
delivered the opinion of the Court. This is an action of assumpsit, in which the plaintiff claims to recover his salary as a professor in the theological institution of Phillips Academy at Andover, from the time at which the trustees passed a vote, removing him from office, to the final decision of this Court on his appeal. 7 Pick. 303. The question comes before the Court upon a statement of facts provisionally agreed to by the parties, that is, so far as they are legal and competent evidence.
Many of the points of law, involved in the present inquiry, were incidentally discussed and considered and substantially decided, in the former decision of this Court, in which the decree of the visitors removing the plaintiff from his office, was held to have been rightfully made. In that case it was also decided, that by the true construction of the statute, authorizing an appeal from the decisions of the visitors to this Court, it did not confer a general power to re-hear the cause, upon its merits, in matters of fact and law, but only “to declare null and void any decree or sentence of the visitors, which they might consider contrary to the statutes of the founders, and beyond the just limits of the power prescribed to them thereby.” The Court, upon the case presented to them, decided, that in the decree of the visitors removing the plaintiff from his *264 office, they had not acted contrary to the statutes of the foun ders, or gone beyond the just limits of the power thereby pre scribed to them, and therefore that there was no ground upon which this Court was warranted by the statute, in declaring such sentence null and void. The consequence was, that the decree and sentence of deprivation and removal of the plaintiff, thus passed by the visitors, stood valid and affirmed.
The plaintiff contends, that he must be taken and deemed to have continued in office, for the purpose of receiving his salary, until the final adjudication of this Court, because until that time the office was not vacant, and had the decision been the other way, he would still have been the incumbent, under the original institution. It seems very clear, that the office continued full until the actual removal, and the principal question is, which of the several acts done constitutes such removal, the vote of the trustees,, the decision of the visitors, or the adjudication of this Court.
On the part of the plaintiff it is contended, that until the last act, the sentence was not conclusive, that the office was not vacant, so that it could be filled by the appointment ■ of another person, and consequently, that if not vacant, he must be considered the incumbent. On the contrary the defendants contend, that the decision of this Court affirmed the sentence of the visitors, that that sentence related back to the vote of the trustees, and gave validity and effect to it, and so that the removal from office must be deemed to take effect from that time.
The following passage from Burn is in point. “ Thus, if a church be voidable by deprivation, and the ecclesiastical judge hath actually pronounced a sentence of ■ deprivation against the incumbent, yet if the person deprived doth make his appeal, the church is not actually void, so long as the appeal dependeth ; and if the sentence of deprivation upon the appeal be declared void, the clerk is perfect incumbent as before, without any new institution.” 1 Bum’s Ecc. Law, 64, tit. Appeal, § 9. This arises from the nature of the case, because during the pendency of the appeal it cannot be known that the decree of deprivation may not be reversed and annulled, and if so, it is in effect the same thing as if no such de< *265 cree had been passed. Therefore, if the office were deemed vacant to all purposes, and another person appointed to fill it, it would follow that the new incumbent must be removed, and the former one restored. This would at least be an inconvenient course. But after the decision of the appellate court, confirming the decree of deprivation, its effect ceases to be contingent, and then the material question is, at what time does the deprivation take effect, where the sentence of the court of first instance is confirmed on the appeal.
We think the circumstance, that the plaintiff performed no services during the pendency of these appeals, may be laid out of the case, though somewhat relied upon in the argument. The case, which finds the fact upon which this argument is founded, also finds the answer, namely, that the plaintiff tendered his services and resided at the institution, and offered to perform the duties of his office, but was prevented by the act of the trustees. It is very clear, that if the plaintiff was not in fault, an offer' to perform on his part, and a refusal to permit him so to do on that of the defendants, should be taken, so far as his rights were concerned, as an actual performance ; otherwise they would take advantage of their own wrong, contrary to the settled and familiar maxim of law upon that subject. So that whether such offer could avail him or not, must depend upon the more general questions, whether he was rightfully removed from office, and how, and at what time.
The Court have already decided that the proceedings by which the plaintiff was removed from office, were valid ; but it did not then become necessary to decide, at what time the sentence of deprivation took effect, and the Court declined expressing any opinion upon that point. The question then recurs, upon the effect of the vote of the trustees.
Was the plaintiff lawfully removed or suspended from the exercise of the duties of his office, by the vote of the trustees of the 18th of December 1827, to which day the salary has been paid, and beyond which they have refused paying ?
It appears that at the annual meeting of the trustees in August 1827, a committee was appointed’ to inquire generally into the state and condition of the institution, and into the *266 conduct and measures of the students and of the faculty, 80 as t0 present a full view of the state of the seminary. This committee proceeded to make the proposed inquiry, in conducting which, they inquired of each of the professors, severally, including the plaintiff, and also of others. In Sep teinber they made their report, and thereupon the trustees voted, that the interests of the seminary required, that the connexion of the plaintiff therewith should be dissolved ; but no notice was given to the plaintiff of their intention to pass such vote. Thereupon a negotiation was opened with the plaintiff in regard to the terms upon which he would voluntarily resign his office, but no arrangement was made. A committee was then appointed, in November 1827, to consider what further measures it was advisable for the trustees to take in relation to Dr. Murdock; and so much of the report of the committee of inquiry as related to the jealousies and contentions existing in the faculty of the institution, the evils arising from them and the remedies proposed for them, was referred to the committee, who reported at the same meeting, recommending the removal of the plaintiff from his office. A copy of this report was communicated to the plaintiff, that he might have opportunity to make any communication in regard to it which he thought proper. The plaintiff desired to be heard by counsel, and to show cause by legal evidence, against his removal. The trustees declined hearing him by counsel, but expressed their willingness to attend to any communication he might see fit to make. They afterwards informed him that they were not unwilling that he should have the aid of counsel in preparing any argument or testimony which he might choose himself to present to the board, and that he might have opportunity to introduce any pertinent testimony in relation to the report of the committee recommending his removal. Various requests for the inspection of papers and other purposes, were made by the plaintiff, which were refused ; various protests were entered by the plaintiff, who ultimately declined appearing before the trustees ; and on the 18th of December they took the cause into consideration, and being satisfied that there was just and sufficient ground for the removal of the plaintiff from office, and that the interests of the seminary re *267 quired a dissolution of his connexion therewith, they voted that the report be accepted, and that the plaintiff be removed from his office of professor.
From the tenure of the plaintiff’s office, it is quite clear, that he was not liable to be removed by the trustees, upon mere considerations of expediency or convenience, nor unless he had forfeited his office for some of the causes mentioned in the statutes. The question then recurs did the trustees, in this proceeding, profess to act judicially, and was it conducted in such a manner as to give it the force and effect of an adjudication of forfeiture and deprivation of office for misconduct ?
To ascertain what is necessary to be done in the ordinary course of proceedings, according to the ecclesiastical law, to cause a legal deprivation of the incumbent, the rules are thus laid down. 2 Burn’s Ecc. Law, 145. “ These things must concur : 1. A monition or citation of the party to appear. 2. A charge given him, to which he is to answer, called a libel. 3. A competent time assigned for the proofs and answers. 4. A liberty for counsel to defend his cause, and to except against the proofs and witnesses. 5. A solemn sentence, after hearing all the proofs and answers. These are the fundamentals of all judicial proceedings in the ecclesiastical courts, in order to a deprivation ; and if these things be not observed, the party hath just cause of appeal, and may have a remedy by a superior court.”
It is not to be insisted on, that in exercising the powers vested in a new jurisdiction, where no forms are prescribed, any precise course as to forms must be followed ; but these rules indicate the course which must in substance be pursued, by every tribunal acting judicially upon the rights of others. If the trustees at the time considered themselves as acting judicially, we think they virtually disregarded these salutary rules.
On the 27th of September, on the facts stated in the report of the examining committee they declared their opinion, that the interests of the seminary required that the connexion of Dr. Murdock therewith should be dissolved, without any notice of their intention to pass such a resolution and without *268 any specified charges or accusations made against him, and without hearing the party so seriously to be affected in character and estate by these proceedings. It may perhaps be insisted, that this vote did not look to a deprivation, but merely declared it expedient that the connexion of the plaintiff with the institution should cease, with a view to an amicable arrangement for a voluntary resignation on his part. This was at that time, no doubt, the purpose of that vote. But we think it is manifest that there was no trial and no inquiry into the facts upon which the final vote of removal passed, other than the ex parte examination, made by the committee of inquiry. The committee afterwards raised, after the negotiation for a voluntary resignation had broken off, who reported a recommendation of the removal of the plaintiff, and upon whose recommendation the vote of the trustees ultimately passed, was raised expressly for the purpose of taking into consideration the former report of the examining committee, and of recommending what further measures should be had in relation to Dr. Murdock ; and from the fact of their making a report at the same meeting, recommending the removal, it is quite manifest that no new trial or hearing had been had If the plaintiff was liable to removal for incapacity or misconduct, declared to be a ground of removal by the statutes, such case of incapacity or misconduct was a fact to be tried by proper and competent evidence, and in the trial of which the plaintiff had a deep interest. But when the examining committee were conducting their investigations, the plaintiff did not understand, nor did the committee understand, that he was on trial, nor indeed were they commissioned or authorized to try him, but to examine into the state and condition of the institution. Their proceedings thus far were manifestly administrative and not judicial.
But it may be said, that this was merely preliminary, that the trustees subsequently offered to the plaintiff the benefit of a trial. Without insisting on the obvious remark, that after proceeding thus far, and declaring such opinions upon such grounds, embracing the very merits of the alleged offence, and the facts, on which it was to be sustained, the trustees had disqualified themselves from acting judicially, we are of *269 opinion, that the plaintiff was not offered the substantial benefit of a trial. He was furnished with a copy of the report, with liberty to make any communication in relation thereto, which he saw fit. That is, in effect, he was allowed to impugn or refute the charges therein contained, and to rebut and disprove the facts, upon which they were founded, if he could. But it is very manifest, that the plaintiff was entitled to the benefit of the legal presumption in favor of innocence, until the contrary was proved. The burden of proof therefore was upon those who made the accusation, and that proof was to be made openly, and in presence of the accused, after due notice and an opportunity for a full hearing.
The trustees indeed did afterwards give the plaintiff notice that they were not unwilling that he should have the aid of counsel in preparing any argument or testimony, which he might himself choose to present, and that he might himself introduce any pertinent testimony, at such time as might be fixed for hearing him, in relation to the report. Still there was no offer to file specific charges, to fix a time for hearing them, to take upon themselves the burden of proving them by competent testimony, in presence of the accused. They refused the party accused access to the files, papers and documents, which had relation to . the charges intended to be re lied on, and from which the report of the committee containing the charges and the grounds of them, had been prepared. If the trustees considered themselves, up to this time, as acting merely as the guardians of the institution, or as making complaints against the plaintiff for misconduct, these documents and minutes were to be regarded as their own private memoranda, which they would be 'justified in withholding. But they proceeded to pass a vote of removal, avowedly upon the recommendation of the committee, and upon the reasons and facts stated in the report, without other evidence, inquiry, or hearing. How different were the proceedings in the case of the Dutch Reformed Church in Albany v. Bradford, 8 Cowen, 457. There the consistory consisting of the deacons and elders, made a specific charge against their minister to the classis, the court having original jurisdiction in such matters. But the classis required the consistory to give notice of the *270 charges; and the names of divers witnesses relied upon to Pr°ve the charges, were also read to the party accused, before he was compelled to answer or defend. So upon the appeal to the particular synod. No act against the accused was done without notice and an opportunity to defend. And so at, the general synod, the same attention to the legal rights of the accused as to notice and an opportunity to defend, were scrupulously observed. But the trustees made up their mind from evidence or reasons which they did not and would not communicate to the plaintiff, that it was for the interest of the institution that his connexion with it should be dissolved ; an 1 having advanced so far in ex parte proceedings, it is not strange that the plaintiff should have complained of being afterwards suspended from office without specific charges, hearing or trial. The final decree of the trustees was passed without giving the plaintiff an opportunity of examining the records and documents and papers which had been produced against him by “ other persons besides the professors, in an ex parte examination touching the manner in which the plaintiff had performed the duties of his office.”
We should hold such a proceeding in a court of common law to be contrary to the principles of natural justice and the law of the land ; and the proceedings before ecclesiastical tribunals should not be less regardful of those fundamental rules than courts of the common law.
If the visitors had proceeded in the same manner, we do not perceive how their decree could legally have been enforced ; for it is the right of the subjects of this government to have a reasonable notice of the matters and things alleged against them and an opportunity to examine and to answer or defend against any evidence which is produced against them.
From these views it would appear, that the trustees, by the vote in question, did not intend to act judicially, but merely in the administration of the duties assigned them, as managers and guardians of the institution, and meaning to do that which in their judgment the good of the institution required, without intending to adjudicate upon the rights of the plaintiff. But whatever might be their intention, the Court are all of opinion, that for the reasons already given, the measure cannot be sup *271 ported as a judicial proceeding, and did not affect the title of the plaintiff to his office, or his actual possession and enjoyment of the office.
The visitors however proceeded upon very different principles. They did allow the plaintiff a full hearing by counsel, upon the articles exhibited against him before them, and thereupon found him guilty, among other things, of gross neglect of duty. If it be admitted that this decree was suspended by the appeal to the Supreme Judicial Court so far as it related to the plaintiff’s continuing in office, yet the affirmation of it, and the adjudication that it was in no respect erroneous, must relate back to the time of passing it by the visitors and give it effect from that time. This Court having only a limited appellate jurisdiction, and being satisfied that the visitors had acted within the authority given them by the statutes of the founders and the laws of the land, could only affirm or reverse the decree, without a reexamination of the evidence, or of the general merits of the case. They were bound as the records and proceedings stood, to suppose that the visitors had suffi cient evidence before them, to support the charge of gross neglect of duty, on the part of the plaintiff, at the time when they made their decree. From that time the plaintiff must be taken and deemed to have forfeited his office, for the misconduct charged against him, and duly established. If the final decree had been in his favor, the tender of his services on his part and refusal on the part of the trustees, would have availed him ; and we think it does avail him, until the legal decree for his removal was passed by the visitors.
It may be argued that the decree of the visitors affirms and ratifies and relates back to the decree of the trustees which pronounced the plaintiff guilty of gross neglect of duty, and therefore that the plaintiff cannot recover afterwards, upon the principles above assumed. We think that result would have followed, if the trustees had proceeded legally and regularly against the plaintiff in their judicial capacity. But we have seen already, that their decree cannot, for the reasons before given, operate to prejudice the rights or interest of the plaintiff, and cannot be made valid by any proceedings of the visitors- It could, at most, be considered as an accusation *272 against the party, to be heard and tried by the visitors ; and their decree was the first legal adjudication establishing the gross neglect of the plaintiff. That is the only legal evidence which has been furnished to this Court. Now it is not maintained by the defendants that the plaintiff was precluded from his salary from the time when he was guilty of the neglect of duty, or even from the time when the trustees voted .to suspend him to the time when they voted to remove him. They have paid for the services up to the latter period. They do not therefore practically go back to the time when the plaintiff committed the fault, but to the time when, as the)- supposed, the trustees had legally ascertained and decided upon the guilt of the plaintiff, and declared the legal consequence of it, namely, the loss of his office.
The result is, that the plaintiff is entitled to recover for his salary, from the time of the vote for his removal by the trus tees to the time of the decree of removal made by the visitors, and not for any time afterwards. The defendants are to be defaulted, and judgment is to be entered for the plaintiff for the sum to be computed as above.